ADOLPHUS BOECKLER, Appellant, *v.* M. McGOWAN ET UX.,
Respondents.

### November 23, 1880.

In equity, a married woman's separate estate may be subjected to the payment
of such damages as are the natural and legitimate result of her failure to
perform her written agreement to purchase real estate.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Reversed and remanded.*

JAMES TAUSSIG, for the appellant, cited: *Claflin* v. *Van
Wagoner*, 32 Mo. 252; *Schafroth* v. *Ambs*, 46 Mo. 114;
*Lincoln* v. *Rowe*, 51 Mo. 571; *Metropolitan Bank* v. *Tay-
lor*, 53 Mo. 444; s. c. 62 Mo. 338; *Meyers* v. *Van Wag-
oner*, 56 Mo. 115; *Siemers* v. *Kleeburg*, 56 Mo. 196;
*De Baun* v. *Van Wagoner*, 56 Mo. 347.

T. Z. BLAKEMAN, for the respondents.

LEWIS, P. J., delivered the opinion of the court.

The petition shows that the plaintiff, as trustee in a deed
of trust made to secure the payment of certain indebted-
ness, sold certain real estate by public auction, and the
defendant Honora McGowan, wife of her co-defendant,
Michael McGowan, being the highest bidder, became the
purchaser, at the price of $4,000; that she then paid $50,
part of the purchase-money, and signed a memorandum, in
writing, of her purchase, and her agreement to pay the
remainder of the price; that she owned at the time,
through a trustee, and as her separate estate, certain real
property, which is described in the petition; that she
made the purchase for the benefit of her separate estate,
and intended thereby to bind the same for the due per-
formance of her agreement; that said defendant failed to
comply with the terms of her purchase, so that the plain-
tiff was compelled to make another sale in accordance with
the conditions of the trust, at which second sale the prop-

erty was bid off at $3,000. The plaintiff prays that said defendant's separate estate be subjected to the payment of the difference between the sums bid at the two sales. A general demurrer to the petition was sustained by the Circuit Court.

We are not favored with a brief or argument for the respondents, and can only conjecture the grounds upon which they would sustain the judgment rendered below. The appellant's brief informs us that the demurrer was sustained "on the ground that no suit can be maintained to subject the estate of a married woman to liability for damages for the breach of her contract." If we rightly understand this, a distinction is here taken between a liability to respond to a direct claim for money which the contract expressly undertakes to pay, and a responsibility for indirect or incidental damages resulting from a failure to perform the contract.

Courts of equity have from a very early period subjected the separate estates of married women to liabilities which were necessarily ignored by the theories of the common law. There have been conflicting views as to the principles upon which this authority is exercised; but it is the settled law of Missouri that a trust for the wife's separate use, without special limitation, vests in her an alienable estate, independent of her husband, which she may dispose of as a *feme sole* owner, and that she has also, in that case, the other power incident to property in general: the power of contracting debts to be paid out of it; and that, as her creditors have no means at law of compelling the payment of these debts, equity will subject her separate property to that purpose. *Whitesides* v. *Cannon*, 23 Mo. 457; *Hooton* v. *Ransom*, 6 Mo. App. 19; *Schaeffer* v. *Ivory*, 7 Mo. App. 461. Thus, courts of equity do not merely give effect to the wife's power of appointment or dedication of so much of her separate estate as may be necessary to serve the end in view, but recognize her right to contract as if

she were a *feme sole*, the enforcement of her contracts being always effected through the agency of her separate property. Such being the basis of liability, it is difficult to perceive how any material distinction can be supposed between the direct and the indirect consequences of a failure to perform her undertaking. Contract lies at the very root of the claim for judicial interposition. It cannot be that a court which will take cognizance of the contract, as such, will refuse to recognize any injurious result naturally and legitimately flowing from its breach. When a court undertakes to enforce, through a married woman's estate, the payment of her promissory note, the judgment rendered is not a decree for the specific performance of her promise, but is in the nature of an assessment of damages sustained by the holder as a consequence of her breach of the contract. In that case, the measure of damages is the amount, with interest, which she agreed to pay and did not. Such damages are the natural and legitimate result of her failure. Not less natural or legitimate, in the case before us, is the loss of price which the plaintiff has sustained in his sale of the property, as a result of the defendant's failure to perform her contract of purchase. He has done all that in him lay, to reduce the loss occasioned by her dereliction. The difference between the amounts of the two sales represents, in all strictness, the damage which the plaintiff has sustained. We see no reason, in the nature of the wrong done, why such damage may not create as proper a charge upon the separate estate as might follow the failure to pay a promissory note.

The memorandum in writing, signed by Mrs. McGowan, is not set out in the petition, and hence the question of its sufficiency to show her intention to charge her separate estate is not raised by the demurrer.

The judgment is reversed and the cause remanded. The other judges concur.